Brian **AUSTIN**

v.

Richard **NEAL, Thomas J. Nestel, Thomas Seamon, Richard Zappile, Raymond Rooney and the City of Philadelphia.**

Civil Action No. 95–3009.

United States District Court, E.D. Pennsylvania.

June 3, 1996.

Doris J. Dabrowski, Philadelphia, PA, for plaintiff.

William R. Thompson, City of Philadelphia Law Department, Philadelphia, PA, for defendant.

### MEMORANDUM

WALDMAN, District Judge.

### I. Background

This 42 U.S.C. § 1983 civil rights action arises from plaintiff's suspension and subsequent dismissal from the Philadelphia Police Department after he fatally shot a homeless man during a confrontation while on duty. Plaintiff claims that the manner in which he was suspended violated his right to procedural due process, and that the adverse employment actions violated his substantive due process right to "self-preservation" which "underpins the Second Amendment" and to continued public employment. Plaintiff also claims that statements of defendant Neal at and after the time of plaintiff's suspension infringed a liberty interest in his reputation, and asserts a pendent cause of action for defamation under state law as well. Presently before the court is defendants' motion for summary judgment.

### II. Legal Standard

In considering a motion for summary judgment, the court determines whether the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corp.,* 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case under applicable law are "material." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. All reasonable inferences

from the record are drawn in favor of the non-movant. *Id.* at 256, 106 S.Ct. at 2514. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

## III. *Facts*

The pertinent facts from the evidence of record are relatively straightforward and as uncontroverted or otherwise viewed in a light most favorable to plaintiff are as follow.

Plaintiff became a permanent civil service employee on February 24, 1987, serving as a Philadelphia police officer. While on duty on May 19, 1993, plaintiff fatally shot Kenneth McClary, a homeless man who was acting erratically, had struck plaintiff with a bottle and who held another bottle in his hand. Plaintiff, accompanied by counsel, appeared as requested at the Police Department's Internal Affairs Division (IAD) on Friday, May 21st for questioning concerning the shooting. Lt. James Hodgen of the IAD advised plaintiff that:

> We are questioning you concerning an incident that occurred on Wednesday, 5–19–93, at or about 7:56 AM, at 605 S. 20th Street. The investigation of this incident has determined that you fatally shot Kenneth McClary, 36/B/M. As this incident may be a criminal matter, I have a duty to inform you that you have the following rights . . .

Lt. Hodgen then advised plaintiff of his *Miranda* rights. Plaintiff stated that he wished to remain silent. Lt. Hodgen had been instructed to have plaintiff return to the IAD the following Monday if he declined to

make any statement. Lt. Hodgen did so and the proceeding was concluded.

On May 23, 1993, plaintiff was admitted to Horsham Clinic. He had post-traumatic stress disorder, physical symptoms secondary to acute anxiety and psychosocial stressors. The next morning plaintiff's attorney telephoned Lt. Hodgen to inform him of plaintiff's hospitalization and inability to attend the meeting. At Lt. Hodgen's request, counsel appeared at the IAD that afternoon where he was presented with a notice of plaintiff's suspension with intent to dismiss. The notice stated that the Police Commissioner had made the decision as a "result of your actions on May 19, 1993" and that "due to the inability to present you with this document personally, your attorney, Jeffery Minehart, has agreed to accept this on your behalf." The notice is signed by Lt. Hodgen and Mr. Minehart "for" Sgt. Brian Austin. The decision to proceed in this manner was made upon advice from the Department's legal counsel.

Mr. Minehart did not deliver the notice to plaintiff, who first learned of his suspension from a newspaper article the following day.[1] On June 11, 1993, plaintiff was discharged from Horsham Clinic. The same day, defendant Neal issued to plaintiff a written notice of intention to dismiss him.[2]

Commissioner Neal detailed the reasons for the dismissal in the notice. He clearly and cogently stated that plaintiff had violated Department standards for the use of deadly force when he "did not exhaust all reasonable means of apprehension and control before using deadly force," particularly given the "manpower and resources available." The Commissioner cited specific Departmental directives regarding the use of deadly force which he concluded plaintiff had violated. The Commissioner advised plaintiff in writing that if he believed the intended personnel action was unjustified, he could appeal to the Commissioner within ten days and present

---

1. Mr. Minehart states that despite the "accept on your behalf" language, he did not think he had permission from IAD to advise plaintiff of this notice.

2. In suspending plaintiff and issuing this notice, Commissioner Neal exercised his option of taking so-called "direct action" to discipline an officer rather than proceeding through an internal review board and board of inquiry.

facts and reasons in support of such a belief. Plaintiff never contacted the Commissioner.

On June 17, 1993, the Fraternal Order of Police filed a grievance challenging the suspension with intent to dismiss under its collective bargaining agreement with the City. An arbitrator ruled on May 12, 1995 that plaintiff should be reinstated with back pay.[3] On September 8, 1993, the City agreed to pay $300,000 to settle a § 1983 wrongful death claim asserted in this court against it and plaintiff Austin by Mr. McClary's mother.[4]

Before reaching his decision, the Commissioner and his co-defendants consulted several times. They reviewed information from an investigation by IAD and homicide unit officers, including summaries of statements of witnesses and investigators, physical evidence and a diagram of the scene with pertinent locations and distances noted. Defendants Nestel and Seamon recommended plaintiff's dismissal and neither defendant Rooney nor Zappile disagreed. It reasonably appears that plaintiff nevertheless was justified in firing the fatal shot based on the totality of evidence ultimately adduced, including statements of witnesses who changed their initial versions and plaintiff's account provided in arbitration proceedings the following year including his stated unawareness of the presence of more than one other officer at the scene.

The Mayor was "concerned" and the Commissioner "upset" by the number of police shootings. The Mayor had encouraged the Commissioner to be more communicative about his efforts to discipline errant officers. Apparently, members of City Council were also concerned.

On May 20, 1993, an ordinance was passed by the Philadelphia City Council establishing a civilian review board to oversee the handling of complaints of police misconduct and the discipline administered to any officers involved in such conduct. Defendant Neal was opposed to the establishment of such a board because he "felt the Department was capable of investigating those cases on their own."

On May 24, 1993, Commissioner Neal publicly announced plaintiff's suspension for failing to "exhaust all reasonable means before resorting to deadly force." He said the action showed "that the Police Department is prepared to examine all issues relative to any kind of misconduct and prepared to take the appropriate action in those situations."

Mayor Rendell vetoed the civilian review board ordinance on June 3, 1993. In his veto message, the Mayor cited defendant Neal's direct action to dismiss 18 officers since his appointment as Commissioner on August 21, 1992. The Mayor stated that "[t]hese numbers prove that the Police Department is doing both a better job of reducing civilian complaints as well as a better job of cracking down on officers who do have complaints lodged against them."

Since 1990, there were forty-six fatal police shootings which did not result in charges of violations of Department policy against the officers involved. Less than half of these incidents occurred during Commissioner Neal's tenure, as did two in which officers were disciplined and six in which there are open investigations.

Following the arbitration ruling in May 1995, defendant Neal was quoted in news accounts as saying "We dismiss these people for the right reasons, and time and time again we're forced to take these people back. It's frustrating in the sense of trying to manage the department, and in terms of handing out appropriate discipline and in ridding the department of people who should not be part of it." Unidentified "city officials" were characterized in these accounts as "furious" over the arbitrator's ruling and concerned that it would undermine Commissioner "Neal's efforts to limit police shootings and enforce discipline." The news accounts noted that at least nine other fired officers won reinstatement rulings from an arbitrator in the past three years. One account reiterated the alleged misdeeds of several of these

---

3. The City exercised its right to appeal that ruling to the state courts. The appeal process was terminated on March 6, 1996.

4. *See* Pltf. Exh. O; *McClary v. City of Philadelphia,* Civ. No. 93–2736.

officers which included palpably criminal conduct.

### IV. *Discussion*

#### A. PROCEDURAL DUE PROCESS

■ It is undisputed that as a permanent civil service employee, plaintiff had a property interest in his employment and that a "suspension with intent to dismiss" triggers procedural due process protection. The issue then is whether the procedure employed by defendants was constitutionally adequate.

Public employees faced with suspension with intent to dismiss are entitled to notice of the charge against them and an opportunity to respond. *Gniotek v. City of Philadelphia,* 808 F.2d 241, 243 (3d Cir.1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

■ Notice is sufficient if it apprises the employee of the general nature of the charge and evidence against him, and does so in a manner which is timely under the particular circumstances. *Gniotek,* 808 F.2d at 244. Plaintiff argues that notice was insufficient because at the May 21, 1993 meeting he was not told that he had violated any specific police policies or that an adverse employment action might be taken against him. Such a precise disclosure, however, is not required to satisfy due process requirements.

■ The named plaintiff in *Gniotek* was given a written form[5] that stated:

> We are questioning you concerning testimony presented in Federal Court under oath by Eugene Boris an admitted number writer, that he paid you $60 per month for

an extended period beginning in 1982 for protection of illegal activities.

808 F.2d at 244. The Court found that "[t]his statement, clearly, gave Gniotek notice of the charges and nature of evidence against him. It was of such specificity to allow Gniotek the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges." *Id.* None of the plaintiff officers was informed of the intent to suspend them until the conclusion of their hearings. *Id.* at 242.

The plaintiff police officer in *Copeland* was called for an interview by IAD after a positive urinalysis for drugs. During the interview plaintiff was not told that he faced suspension, but was merely asked to explain the positive test result. The Court concluded that the absence of specific advice to plaintiff of the possible consequences he faced and the failure to provide details of the test result, including the type and concentration of drugs, did not render the proceeding constitutionally infirm. *Copeland,* 840 F.2d at 1145.

■ Within forty-eight hours of a fatal shooting, plaintiff was told to report to the IAD. He was explicitly told that he would be questioned about that incident and that the Department perceived the incident "may be a criminal matter."[6] Plaintiff came to the interview with an attorney. One reasonably could not find from the record presented that by the time he was summoned and confronted by IAD, plaintiff failed to perceive that serious repercussions could result from the incident and that this was his opportunity to tell his side of the story if he wished to do so. Plaintiff cannot sustain a claim on the record presented that defendants failed to apprise him of the nature of the charge against him or what it was based upon.

---

5. Whether questioning is oral or in writing does not affect the due process analysis. *See Copeland v. Philadelphia Police Department,* 840 F.2d 1139, 1145 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989).

6. Plaintiff acknowledged in his deposition that he was well aware from press reports and fellow officers that there were citizen protests and alle-

gations of wrongdoing about the shooting and that a purported witness had described the event as an "execution." Moreover, the advice that the department viewed the shooting as possibly "criminal" clearly conveyed that plaintiff was suspected of using deadly force against Mr. McClary without justification.

■ That notice must be "timely under the particular circumstances of the case" does not require that an employee receive notice prior to his opportunity for a hearing. *Gniotek,* 808 F.2d at 244. Plaintiff was in a unique position to provide a first-hand version of what he perceived and why he fired at Mr. McClary. When plaintiff received notice at the time of the May 21st interview, the shooting incident clearly was still fresh in his mind and he certainly knew "what facts within his knowledge might be presented" to mitigate or refute the charge.

Plaintiff clearly was given a constitutionally adequate opportunity to respond. He was informed that he had been called to the IAD for questioning about the shooting and elected to remain silent. As the Court in *Gniotek* held, a plaintiff's assertion of his privilege against self-incrimination does not mean that he was deprived of an "opportunity to respond" for procedural due process purposes. *Gniotek,* 808 F.2d at 245 ("The fact that appellants had to choose whether to talk or to remain silent offends neither the fifth nor the fourteenth amendment.").

It is clear from the record presented that the notice and opportunity to respond provided to plaintiff at the pre-suspension interview satisfied the due process standards articulated in *Gniotek.*

■ That the Commissioner may have lacked the "just cause" required by a collective bargaining agreement to suspend plaintiff or to take direct disciplinary action has no bearing on the question of procedural due process. That the merits of the Commissioner's decision may be questioned or subject to appropriate review in another forum does not constitute a denial of procedural due process. *See Loudermill,* 470 U.S. at 543 n. 8, 105 S.Ct. at 1493 n. 8 (due process clause is intended to inform not interfere with employer's decision).

■ Plaintiff's argument that the failure personally to provide him with a copy of the suspension notice violates his procedural due process rights is untenable on the record

presented. The attorney who accompanied plaintiff to the IAD interview had specifically agreed to accept the notice on plaintiff's behalf and signed an acknowledgement of the notice "for Sgt. Brian Austin." One cannot reasonably find that Lt. Hodgen or any defendant was unjustified in relying on counsel's acceptance of the suspension notice on plaintiff's behalf.

Plaintiff does not appear to contend that there was any procedural due process deficiency in regard to the actual notice of intent to dismiss. This notice provided a precise explanation for the decision and informed plaintiff of his opportunity to appeal to the Commissioner and submit any supporting facts or reasons if plaintiff disagreed with the determination.[7]

## B. SUBSTANTIVE DUE PROCESS

■ Plaintiff asserts that his suspension and dismissal also constitute a violation of his substantive due process rights. To sustain this claim, plaintiff must show that he was deliberately and arbitrarily or capriciously deprived of a "fundamental" right for which substantive due process protection is ordinarily afforded. *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993); *Shoemaker v. City of Lock Haven,* 906 F.Supp. 230, 237 (M.D.Pa.1995). Government action is arbitrary or capricious for Constitutional purposes only when it is "egregious" or "irrational." *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986).

Application of the concept of substantive due process "is properly reserved for truly egregious and extraordinary cases." *Myers v. Scott County,* 868 F.2d 1017, 1019 (8th Cir.1989). The Supreme Court has cautioned against expanding the concept of substantive due process. *See Collins v. City of Harker Heights,* 503 U.S. 115, 124, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992) ("utmost care" should be exercised in assessing scope of substantive due process); *Bowers v. Hardwick,* 478 U.S. 186, 195, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986) (courts should show

---

7. Plaintiff, who invoked the 5th Amendment prior to his suspension and never submitted a statement in the ten days provided before his dismiss-al, unsurprisingly does not aver that he would have actually availed himself of any additional intervening opportunity to be heard.

"great resistance" to expansion of substantive due process and in "redefining the category of rights deemed to be fundamental"). Our Circuit Court has held that "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that shocks the conscience." *Fagan v. City of Vineland,* 22 F.3d 1296, 1303 (3d Cir.1994) (en banc). *See also Giuffre v. Bissell,* 31 F.3d 1241, 1258 (3d Cir.1994) (use of official coercion to effect deprivation of property sufficiently "conscience-shocking" to implicate substantive due process).

■ Plaintiff first asserts that defendants violated his "fundamental right to self-preservation" grounded in the Second Amendment and "natural law."

■ That the Second Amendment may ensure the relatively unfettered access of law-abiding citizens to firearms does not remove from governmental authorities the right or obligation to see that firearms are *used* responsibly. That virtually every jurisdiction recognizes a legal right of self-defense does not mean that anyone who may erroneously be found to have killed other than in self-defense has a cognizable federal constitutional claim against the charging official.

There is no evidence that any defendant, capriciously or otherwise, directed plaintiff or any other officer not to defend himself when and to the extent necessary. Indeed, the directives and policies by which defendants sought to measure plaintiff's conduct specifically permit the use of deadly force when necessary for self-defense.

■ Plaintiff next asserts that defendant violated his property right in public employment which is "fundamental" and entitled to substantive due process protection. Courts have divided on the question of whether a right to be discharged only for cause from tenured public employment is "fundamental" and protected by substantive due process. *See McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.1994) (en banc) (public employment rights not "fundamental" and "do not enjoy substantive due process protection"), *cert. denied,* —— U.S. ——, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995); *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1351 (6th Cir.1992) (property right in tenured public employment not "fundamental" or protected by substantive due process); *Newman v. Com. of Mass.,* 884 F.2d 19, 25 (1st Cir.1989) (recognizing and noting cases in which other courts recognized applicability of substantive due process to arbitrary and capricious government action adversely affecting public employment),[8] *cert. denied,* 493 U.S. 1078, 110 S.Ct. 1132, 107 L.Ed.2d 1037 (1990); *Moore v. Warwick Public School Dist. No. 29,* 794 F.2d 322, 329 (8th Cir.1986).

In *Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court clearly held that tenured public employees who face dismissal are entitled to procedural due process protection. The Supreme Court has also made clear that "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood,* 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684 (1976). The Supreme Court, however, has not squarely addressed the question of whether a property interest in continued public employment implicates substantive due process concerns.

The Supreme Court seemed at least implicitly to question the applicability of substantive due process to an administrative termination of public employment in *Harrah Independent School Dist. v. Martin,* 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979). Plaintiff in *Harrah,* a tenured teacher, sued when a school board refused to renew her contract pursuant to a nonrenewal rule adopted as a sanction for failure to comply

---

8. The Court in *Newman* cites Eleventh and Sixth Circuit cases among these. The Eleventh Circuit case was since overruled by *McKinney.* The court in the Sixth Circuit case merely noted that the plaintiff, held to have no protected property interest in his continued state employment, was not arbitrarily or capriciously discharged. *See* *Parham v. Hardaway,* 555 F.2d 139, 141–42 (6th Cir.1977). The recent opinion in *Sutton* leaves no room to suggest that the Sixth Circuit had concluded in *Parham* that the arbitrary termination of a public employee with a recognized interest in continued employment would violate substantive due process.

with a board regulation requiring continuing education credits. The Court reversed a holding of the Court of Appeals that the nonrenewal rule was arbitrary and thus violated substantive due process. The Court observed that the interest allegedly entitled to substantive due process protection did not resemble the type of basic rights generally accorded such protection. *Id.* at 198, 99 S.Ct. at 1064. The Court also stated that any substantive due process claim was "wholly untenable" since the board's decision could not reasonably be viewed as arbitrary. *Id.* at 199, 99 S.Ct. at 1064. The Court discussed the concept of arbitrariness and rational purpose, however, this was in the context of addressing the board's "legislative" act of promulgating the nonrenewal rule. *See McKinney,* 20 F.3d at 1557 n. 9 (noting important distinction between legislative acts affecting employment and termination by executive official).

An observation of the Court in rejecting the holding of the Court of Appeals that plaintiff had sustained an equal protection claim seems particularly significant. In applying the deferential rational basis test to the differential treatment of teachers resulting from enforcement of the rule, the Court observed that plaintiff had not asserted "the deprivation of any fundamental constitutional right." *Id.*

 The Third Circuit has not decided this issue.[9] The Court did recently hold that mere ownership of real property is an interest sufficient to warrant substantive due process protection. *DeBlasio v. Zoning Bd. of Adjustment for Township of West Amwell,* 53 F.3d 592, 600–01 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995).

Arguments may fairly be made on both sides of the issue. The prospect of federal courts becoming civil service boards of appeal is not enticing. *See Bishop,* 426 U.S. at 349, 96 S.Ct. at 2079 (a "federal court is not the appropriate forum in which to review the multitude of personnel decisions made daily by public agencies"). A wrongful termination of any employment is lamentable. A right to be discharged from public employment only for cause, however, does not seem on its face to be "implicit in the concept of ordered liberty" or "deeply rooted in this Nation's history and tradition." *Bowers,* 478 U.S. at 191–92, 106 S.Ct. at 2844–46. Its deprivation would not appear to imperil "our democratic society and its fundamental freedoms." *McKinney,* 20 F.3d at 1561.

On the other hand, one's interest in securing his job is arguably as significant as one's interest in the preferred or profitable use of his real property recognized in *DeBlasio.* The court cannot predict with any confidence that our Circuit Court would decline to hold that the termination of tenured public employment implicates substantive due process concerns. For the reasons which follow, however, the court need not resolve the issue in this case.

While certainly maintaining that the action taken by Commissioner Neal and recommended by other defendants was incorrect or ill-advised, plaintiff does not argue that it was irrational in that it was unrelated to any legitimate governmental interest. Rather, plaintiff argues that nevertheless "an action rationally related to a government interest may violate the substantive due process clause if the action is improperly motivated." It may be more precise and accurate to say that an act otherwise rational on its face may be capricious, egregious or conscience-shocking if the actor is motivated by some malevolent purpose. *See Midnight Sessions, Ltd. v. City of Philadelphia,* 945 F.2d 667, 683–84 (3d Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992).

Plaintiff contends that defendants acted with an "improper motive" to show that the Police Department was capable of policing itself and thereby to induce the Mayor to veto the civilian review board legislation. All defendants testified that they were not motivated in assessing plaintiff's case by a desire to influence the decision of the Mayor.

---

9. In rejecting a substantive due process claim of a discharged teacher, the Court seemed to assume without deciding that the interest of a tenured public employee in his employment may be sufficient to implicate substantive due process. *See Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1077 (3d Cir.1990).

From the record presented, one reasonably could not find that they are lying without engaging in substantial speculation.

Plaintiff points essentially to three things. One is the Commissioner's acknowledged opposition to a civilian review board. That Commissioner Neal was opposed to a civilian review board simply will not support a reasoned finding that he acted capriciously to influence the Mayor. Plaintiff points to the prior fatal shootings for which no charges were brought. Most of these cases preceded Commissioner Neal's tenure and there also is nothing of record from which one can conclude that the underlying facts in each of these cases are equivalent. Investigations of six such shootings were being pursued long after the events in question in this case, and Commissioner Neal had taken direct action to discipline seventeen other officers he found to have engaged in misconduct. The other "evidence" to which plaintiff points actually suggests that Commissioner Neal was determined as a general matter to crack down on *any* officer who violated Department policy on the use of firearms.

These are news articles which reported that the Mayor was "concerned" and the Commissioner was "upset" over "the rise in police shootings," and that the Commissioner was prepared "to take serious disciplinary action against any officers found to have used their guns outside department directives." The record contains no verification by a competent witness of the content of these articles which themselves are hearsay. Nevertheless, as plaintiff relies upon them, it is not inappropriate to observe that however lenient or lax prior enforcement of deadly force policies may have been, it is difficult to discern an improper purpose from a commitment to take serious action against any officer who is found thereafter to have violated those policies.

Plaintiff also argues that the court "can accord great weight to the arbitration." That an arbitrator ultimately concluded there is not "just cause" under the bargaining agreement to dismiss plaintiff may be evidence that the Commissioner made a mistake but does not constitute a finding of improper motive. To the contrary, the arbitrator acknowledged that she was required to engage in "second guessing the expert opinion of the commissioner" under a "different set of criteria for decision making." The arbitrator made clear that having the "benefit of Austin's testimony as to his state of mind and his view of the incident" was critical and that the situation as presented to defendants "supports their conclusion that deadly force was inappropriate." Even then, the arbitrator acknowledged that she reached her contrary conclusion only after "long thought."

A jury, without speculating, simply could not find on the record presented that any defendant ordered, recommended or acquiesced in the suspension of plaintiff for the purpose of inducing a mayoral veto. It would require an even larger leap to conclude that a notice of intent to dismiss plaintiff was issued to induce the veto of an ordinance which in fact had been vetoed eight days earlier.

■ To the extent that any defendant had a desire to demonstrate to the public and City officials that the Department could and would discipline any officer found to have used deadly force improperly, this is hardly the type of improper motive or official abuse which might implicate substantive due process concerns. A government decisionmaker may properly consider public opinion reflective of legitimate concerns. *Bannum, Inc. v. City of St. Charles, Mo.,* 2 F.3d 267, 272 (8th Cir.1993); *Midnight Sessions,* 945 F.2d at 684–85. Indeed, he would likely be viewed and criticized as unresponsive if he failed to do so. For example, in response to expressions of public concern, law enforcement agencies in recent years have taken more determined action against persons believed to be driving under the influence of alcohol.

Concern about police shootings is not mindless or unreasonable. If it was not improper for the Mayor and City Council to be concerned about police shootings and the administration of discipline to officers who violate Department policies, it was clearly not improper for the ranking officials of the Department to be so concerned. If it was not improper for City Council to take steps to assure the public that investigations of misconduct and discipline of violators would be

effective, it was not improper for the Commissioner to so assure the public.

██ The existence of a particular alleged improper motive is a question of fact, while the question of whether an action is rationally related to a legitimate governmental interest is one of law. *Midnight Sessions,* 945 F.2d at 682–83. It would seem to follow that whether a particular motive is improper is a question of law. If not, juries would be permitted to return verdicts variously for and against defendants for engaging in identical conduct with an identical motive based on differing perceptions of the propriety of such a motive. In any event, a jury reasonably could not find that a desire of the Police Department hierarchy to show the citizens they serve and the elected officials to whom they are accountable that alleged misconduct can be efficiently and effectively addressed by the Department constitutes an "improper motive." Indeed, jurors would likely be incredulous upon being instructed that they may find such a purpose to be improper.

There are times when police officers are justified in using deadly force. Indeed, this is a reason why they carry firearms. Police officers who face difficult and dangerous situations understandably do not like to be second-guessed. The public understandably expects that with the training and resources available to them, police officers will undertake every effort to avert the use of or need to use deadly force. It ultimately falls upon the leaders of the Department to implement and effectuate policies to delimit the use of deadly force. They too do not like to be second-guessed.

The most that fairly appears from the record viewed most favorably to plaintiff is that at a time when the Commissioner wished to reassure the public and elected governing officials that the Department could effectively address police misconduct, defendants made or participated in a precipitous and erroneous decision about whether plaintiff had violated deadly force policy.[10] The evidence of record does not reasonably support a finding that in doing so, any defendant was capricious or ill-motivated or violated plaintiff's right to substantive due process.[11]

## C. PLAINTIFF'S REPUTATIONAL CLAIMS

Plaintiff claims that the public remarks of Commissioner Neal at the time of plaintiff's suspension and the published remarks attributed to the Commissioner and unidentified "city officials" following the ruling of the arbitrator were defamatory and violative of plaintiff's liberty interest in his reputation which, he asserts, is protected by substantive due process and Article I, § 1 of the Pennsylvania Constitution.

██ As a general matter, one does not have a federal constitutionally protected liberty interest in his reputation. *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976). A public official may properly disclose charges against a discharged employee. *Rosenstein v. City of Dallas,* 876 F.2d 392, 395 (5th Cir.1989), *aff'd on relevant grounds,* 901 F.2d 61 (5th Cir. 1990) (en banc).

██ Where one is defamed or stigmatized in the course of his dismissal from public employment, however, he does have a cognizable liberty interest. *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1978); *Paul,* 424 U.S. at 709, 96 S.Ct. at 1164; *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Brennan v. Hendrigan,* 888 F.2d 189, 196 (1st Cir. 1989); *Doe v. Department of Justice,* 753 F.2d 1092, 1111 (D.D.Cir.1985). That interest, however, is not accorded substantive due

---

10. The court does not suggest that Commissioner Neal now acknowledges his decision was incorrect. All of the evidence of record suggests that he continues to adhere to his position that plaintiff's fatal use of deadly force against Mr. McClary was inappropriate.

11. The court does not suggest that, absent some new legally cognizable justification, plaintiff is foreclosed from pursuing further causes of action for any failure to reinstate him following the termination of the City's appeal in March 1996. This case was litigated only on the basis of allegations in the amended complaint of June 6, 1995 and discovery conducted through March 1, 1996.

process protection. *In re Selcraig,* 705 F.2d 789, 796–97 (5th Cir.1983). *See also* Brown & Kerrigan, *42 U.S.C. § 1983: The Vehicle for Protecting Public Employees' Constitutional Rights,* 47 Baylor L.Rev. 619, 645 (1995). Rather, the right accorded is that of procedural due process, specifically the right to an opportunity to refute the charges and clear one's name. *Codd,* 429 U.S. at 627, 97 S.Ct. at 884; *Paul,* 424 U.S. at 710, 96 S.Ct. at 1165; *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707; *Brennan,* 888 F.2d at 196; *Doe,* 753 F.2d at 1102–03.

 That a right to one's reputation is recognized in the state constitution does not confer federal substantive due process protection. *See Puricelli v. Borough of Morrisville,* 820 F.Supp. 908, 914 (E.D.Pa.1993), *aff'd,* 26 F.3d 123 (3d Cir.1993), *cert. denied,* — U.S. ——, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994). Federal substantive due process rights are created by the U.S. Constitution and federal substantive due process protection is accorded only to fundamental interests derived from the federal Constitution. *Ewing,* 474 U.S. at 229, 106 S.Ct. at 515 (Powell, J. concurring); *Nilson v. Layton City,* 45 F.3d 369, 372 (10th Cir.1995); *Kraushaar v. Flanigan,* 45 F.3d 1040, 1047 (7th Cir.1995) (rights accorded substantive due process protection are those implicating fundamental principles of liberty and justice); *Mangels v. Pena,* 789 F.2d 836, 839 (10th Cir.1986).[12] That a state has created a liberty interest in reputation would at most implicate procedural due process rights. *Kraushaar,* 45 F.3d at 1047; *Puricelli,* 820 F.Supp. at 915.[13] As noted, however, even when accompanied by other tangible injury such as loss of employment, federal due process requires no more than a timely opportunity to clear one's name.

 Thus, a federal constitutional claim arises not from the defamatory or stigmatizing conduct *per se* but from the denial of a name-clearing hearing. *Selcraig,* 705 F.2d at 797 & n. 10. It follows that to sustain a § 1983 stigmatization claim, an aggrieved employee must allege and prove that he timely requested a name-clearing hearing and that the request was denied. *Howze v. City of Austin,* 917 F.2d 208 (5th Cir.1990); *Rosenstein,* 876 F.2d at 396.

 There is no evidence of record that plaintiff requested or was refused a name-clearing hearing at the time of his dismissal. He was expressly given ten days to appeal to the decisionmaker and provide any reasons why he believed that his dismissal for inappropriate use of deadly force was unjustified, and he failed to do so. Thus, even if defendant Neal's public statement of May 24, 1993 could be found to be defamatory or stigmatizing, plaintiff has failed to establish a critical element on which he bears the burden of proof to sustain a § 1983 reputational claim for the remarks made on that occasion.

The remarks attributed to Commissioner Neal following the ruling of the arbitrator would have been made two years after plaintiff's dismissal. The Answer contains no admission that the Commissioner actually made the remarks attributed to him and plaintiff presents no competent evidence that he did. Plaintiff merely submits copies of news articles in which the reporter ascribes the remarks to the Commissioner. Plaintiff presents neither deposition testimony in which defendant Neal acknowledges making these comments nor an affidavit of a reporter or anyone else averring that he heard the Commissioner make them.[14] There is no evidence of the identity of any of the "city officials" to whom most of the later comments complained of were attributed and no competent evidence that the comments as synopsized in new accounts were actually made.

12. That one must look to state law to determine whether a property right exists does not alter the fact that certain property rights are accorded substantive due process protection by virtue of federal law.

13. In recognizing a right to reputation, the Pennsylvania constitution is unique among the states. *See* Kahn, *Freedom of the Press and the Fundamental Right of Reputation Under the Pennsylvania Constitution,* 57 Alb.L.Rev. 465, 471 (1993).

14. By contrast, plaintiff submits a contemporaneous verbatim transcript of the Commissioner's remarks in May 1993, the accuracy and authenticity of which are not challenged.

In any event, even assuming that the various comments were made as reported, that they were defamatory, that they were made in the course of denying plaintiff employment and that the statements of anonymous city officials could constitute a policy or practice, there is no evidence that following the publication of these statements plaintiff timely made a request for a name-clearing hearing which any defendant refused.

It is not clear that Pennsylvania would require more than a meaningful opportunity to be heard when one's liberty interest in reputation created by Article I, § 1 is impinged. *See R. v. Com., Dept. of Public Welfare*, 535 Pa. 440, 636 A.2d 142, 152–53 (1994) (state constitutional interest in reputation vindicated by procedure mandated in *Paul v. Davis* for stigmatization-plus cases); *Pennsylvania Bar Ass'n. v. Com.*, 147 Pa. Cmwlth. 351, 607 A.2d 850, 857 (1992) (citizen cannot be deprived of state constitutional reputational interest "without a meaningful opportunity to be heard"). In the absence of any viable federal claim, however, this is something the court need not resolve. Similarly, the court need not address the parties' respective contentions about whether the comments attributed to Commissioner Neal and others following the arbitrator's ruling reasonably may be found to satisfy the elements of a state law defamation claim pursuant to 42 Pa.C.S.A. § 8343(a).[15]

## D. DEFENDANTS' IMMUNITY AND *MONELL* CLAIMS

Because plaintiff has not sustained a claim of a violation of a federal constitutional right in this case, it is unnecessary to resolve the individual defendants' claims of entitlement to qualified immunity.

■ The court notes, however, that qualified immunity protects officials from mistaken judgments and shields from liability "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). Qualified immunity

is denied only if it reasonably appears that "the unlawfulness of [an official's] actions was so apparent that no reasonable [official] could have believed his actions were lawful." *Lee v. Mihalich*, 847 F.2d 66, 69 (3d Cir.1988).

■ As noted, whether a tenured public employee, absent good cause for termination, has a fundamental right to continued employment which is entitled to substantive due process protection is debatable and unsettled. It was eminently reasonable to conclude that plaintiff appreciated on May 21, 1993 the charge he faced, the reason for that charge and the possible consequences, and to rely on Mr. Minehart's acceptance of the notice of plaintiff's suspension on May 24, 1993. Thus, even if there were some deficiency, it appears that reasonable officials in the circumstances presented could have believed that no due process right had been violated and that their actions were lawful.

The City claims that it cannot be liable because there is no evidence of any pertinent policy, practice or custom. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Suffice it to say that in so far as Commissioner Neal had final decisionmaking authority with regard to the challenged actions, the City could be liable for those actions were they unconstitutional. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Keenan v. City of Philadelphia*, 983 F.2d 459, 468 (3d Cir.1992); *Defeo v. Sill*, 810 F.Supp. 648, 655 (E.D.Pa.1993).

■ It seems clear that the City and the individual defendants, in so far as they are sued in their official capacities, enjoy immunity from liability for defamation. *See* 42 Pa.C.S.A. § 8542; *Kessler v. Monsour*, 865 F.Supp. 234, 240–41 (M.D.Pa.1994); *Verde v. City of Philadelphia*, 862 F.Supp. 1329, 1336–37 (E.D.Pa.1994); *Weinstein v. Bullick*, 827 F.Supp. 1193, 1205–06 (E.D.Pa.1993); *Petula v. Mellody*, 158 Pa.Cmwlth. 212, 631 A.2d 762, 765 (1993).

---

**15.** Defendants refer in a footnote in their brief to the one year state statute of limitations for defamation actions and it appears that plaintiff's claim is based only on the reported 1995 comments. Defendants, however, have never asserted the statute of limitations by motion or answer. *See* Fed.R.Civ.P. 8(c).

458

## V. *Conclusion*

Accepting that his conduct is attributable to defendants, Lt. Hodgen proceeded on May 21 and May 24, 1993 in a manner consistent with the guaranty of procedural due process.

Even assuming that continued public employment is a fundamental right which enjoys substantive due process protection, the record presented would not reasonably sustain a finding that any defendant deliberately acted in an arbitrary, capricious, ill-motivated or conscience-shocking manner in taking, recommending or acquiescing in the adverse employment action complained of.

Plaintiff's stigmatization claim implicates procedural, not substantive, due process rights. In the absence of any proof that he timely requested a name-clearing hearing and that any defendant refused such request, plaintiff cannot sustain his federal reputational claim.

Defendants' request for summary judgment will be granted on plaintiff's federal claims. In the absence of a viable federal claim, the court will dismiss plaintiff's state claims without prejudice to pursue them in a state forum. *See* 28 U.S.C. §§ 1367(c)(3) and (d); 42 Pa.C.S.A. § 5103(b)(1).