**Joseph O. GARCIA, Plaintiff,**

v.

**STATE OF NEW MEXICO OFFICE OF THE TREASURER and David W. King, Individually, Defendants.**

**No. CIV. 96–581 LH/JHG.**

United States District Court,
D. New Mexico.

April 7, 1997.

Peter J. Adang, Peter J. Adang, P.C., Albuquerque, for plaintiff.

Douglas A. Baker, Martha G. Brown, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant King.

Judith C. Herrera, Herrera, Long & Pound, P.A., for defendant State of New Mexico Office of the Treasurer.

## MEMORANDUM OPINION

HANSEN, District Judge.

**THIS MATTER** is before the Court on Defendant David W. King's Motion to Dismiss Plaintiff's Second Amended Complaint or Alternatively for Summary Judgment (Docket No. 48), filed September 18, 1996. Plaintiff Garcia brought his claim under 42 U.S.C. § 1983 and additionally makes several pendent state law claims, as well as a request for injunctive relief. Having reviewed the motion and memoranda submitted by the parties and having considered the arguments of counsel, the Court finds that Defendant's motion to dismiss is well-taken and shall be **granted.** Plaintiff's Motion for Partial Summary Judgment (Docket No. 29) and Defendant King's Motion to Strike Plaintiff's Second Amended Complaint (Docket No. 43) are moot and shall be dismissed.

### BACKGROUND

The substance of Plaintiff's Complaint is as follows.[1] In 1985, Plaintiff Garcia became a consultant to the State of New Mexico Office of the Treasurer. Six months later he was hired as the Director of the Collateral Compliance Division, a position from which he could only be removed for just cause. (Second Amended Complaint (hereinafter SAC) ¶ 6.) Defendant King was the State Treasurer and Plaintiff's "ultimate superior" from 1991 to 1993. (*Id.* ¶ 8.) Beginning in or about early 1993, Defendant began pressuring Plaintiff to solicit cash donations from Magfinco, an investment firm which at that time was seeking a multimillion-dollar bond contract with the State Treasurer's Office. (*Id.* ¶¶ 9–12.) Over the next several months Defendant continually approached Plaintiff and Magfinco, each time repeating his request for a cash donation in return for award of the bond contract. (*Id.* ¶ 13.)

Plaintiff alleges that by late April 1993, "King had been rebuffed" by both Magfinco and Plaintiff in "his efforts to solicit a bribe of $50,000." (*Id.* ¶ 14.) Realizing that his solicitation efforts "had gone too far," Plaintiff contends that Defendant crafted a

---

1. The Court assumes, for purposes of considering the motion to dismiss, that Plaintiff's Second Amended Complaint was properly filed and that the allegations, as outlined herein, are true.

scheme whereby he would engage Plaintiff in secretly-taped conversations and make it appear as if it were Plaintiff who had attempted to engage Defendant in bribery. (*Id.* ¶¶ 18–19.)

After several secretly-taped sessions, Plaintiff allegedly grew wise to King's plot and informed him that "he was aware that King had been wearing a 'wire.'" (*Id.* ¶¶ 19–20.) Within twenty-four hours a criminal investigation was launched against Plaintiff by the New Mexico Organized Crime Commission. (*Id.*) On May 11, 1993, Plaintiff was notified by the State Treasurer's Office of contemplated disciplinary action against him. (*Id.*) He was advised of the charges against him, the evidence relied on to sustain those charges, as well his right to review that evidence and to respond to the charges in writing or orally. (Def. King's Reply Br. in Supp. Second Mot. Dismiss or Summ. J. (hereinafter King's Reply Br.) Ex. 2, Notice of Contemplated Action.)

Plaintiff responded to the Notice of Contemplated Action on May 18, 1993, denying all charges. (*Id.* Ex. 3, Letter from Joseph Garcia to State Treasurer's Office.) Nonetheless, on May 22, 1993, Plaintiff's employment with the State Treasurer's Office was terminated. (SAC ¶ 21.) Plaintiff appealed to the State Personnel Board on July 14, 1993.

Plaintiff alleges that in or about August 1993, Defendant began "'going public' with the false allegation that the Plaintiff had attempted to solicit a bribe from him," and that "Plaintiff's reputation and integrity were pilloried in the newspapers and other media." (*Id.* ¶ 23.) Plaintiff was eventually indicted for attempted bribery of a public official and brought to trial. (*Id.* ¶¶ 24–25.) After an eight day trial, Plaintiff was acquitted of the charge March 13, 1995. (Pl.'s Mem. in Opp'n to Def. King's Mot. Dismiss or Summ. J. (hereinafter Pl.'s Mem.) Ex. C.)

During the pendency of Plaintiff's criminal trial, his appeal before the State Personnel Board was held in abeyance. (SAC ¶ 26.) After his acquittal, Plaintiff pursued his appeal and entered into a stipulation whereby the Board admitted that "[t]he termination of Appellant was without just cause as defined in the Rules and Regulations of the New

Mexico State Personnel Board" and whereby Plaintiff agreed not to seek any further remedy before the State Personnel Board. (Pl.'s Mem., Ex. C.)

Plaintiff's Second Amended Complaint alleges violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983. He also alleges several pendent state-law claims: breach of contract, retaliatory discharge, defamation, perjury, malicious prosecution, intentional infliction of emotional distress, and prima facie tort.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1342(4). The Court may exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

## DISCUSSION

Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are therefore rarely granted. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (1990). In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and take the allegations asserted in the complaint as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A court should not grant a motion to dismiss for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, "the issue is not whether a plaintiff will ultimately prevail but whether claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. The Court first considers the Defendant's motion to dismiss and concludes that Plaintiff has failed to allege circumstances giving rise to a federal cause of action. The parties' remaining motions are, therefore, moot.

## I. The Due Process Claims

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property, without due process of law...." U.S. CONST. amend. XIV. It has a procedural, as well as a substantive, component. "The two components are distinct from each other because each has different objectives, and each imposes different constitutional limitations on government power." As explained in *Howard v. Grinage*:

A procedural due process limitation, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision....

Substantive due process, on the other hand, serves the goal of preventing "governmental power from being 'used for purposes of oppression,'" regardless of the fairness of the procedures used.

82 F.3d 1343, 1349 (6th Cir.1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)).

Plaintiff alleges that his termination from employment by the State of New Mexico Office of the Treasurer violated both his procedural and substantive due process rights. (SAC ¶ 36.) The Court will first address Plaintiff's procedural due process claim.

### A. Procedural Due Process

Plaintiff alleges that Defendant King failed to provide him with a pre-termination hearing prior to Plaintiff's May 22, 1993, termination and that when Plaintiff requested documentary evidence supporting the charges against him, Defendant refused to provide them. (SAC ¶ 37.) This, Plaintiff argues, constituted a deprivation of his procedural due process rights. (*Id.*)

■ Plaintiff's procedural due process claim "depends on [his] having had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (citations omitted). If he did, then "the State could not deprive [him] of this property without due process." *Id.* (citations

omitted); *see also Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir.1988) (holding that "[a] plaintiff must first establish ... that there is a protected [property] interest at stake").

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...'." *Loudermill*, 470 U.S. at 538, 105 S.Ct. at 1491 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). The State Personnel Board Rules involved here plainly create such an interest in Plaintiff. Plaintiff was a "classified state employee," (SAC ¶ 5), and could be "dismissed only for just cause." (King's Reply Br., Ex. 2.) Thus, the Court concludes that Plaintiff had a property right in his job subject to the procedural protections afforded by the Due Process Clause. Having made this finding, "'the question remains what process is due.'" *Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

■ "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950)). "Procedural due process requires a pre-termination hearing where liberty or property interests protected by the Fourteenth Amendment are implicated." *Conaway*, 853 F.2d at 793.

However, "[t]he essential requirements of due process, [prior to termination] are notice and an opportunity to respond." *The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.* See *Arnett v. Kennedy*, 416 U.S. [134], at 170–171, 94 S.Ct. [1633], at 1652–1653 [40 L.Ed.2d 15 (1974)] (opinion of Powell, J.); *id.*, at 195–196, 94 S.Ct., at 1664–1665 (opinion of White, J.); *see also Goss v. Lopez*, 419 U.S.

[565], at 581, 95 S.Ct. [729], at 740 [42 L.Ed.2d 725 (1975)]. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

According to his own allegations, Plaintiff received a Notice of Contemplated Action, pursuant to State Personnel Board Rule 17.5, which delineated the charges against him and notified him of the State Treasurer's Office intent to dismiss him. (King's Reply Br., Ex. 2.) The notice advised him that he had the right to review documents supporting the charges and to respond orally or in writing within seven days. (*Id.*) Plaintiff did respond in writing within the time allowed, and he was given the opportunity to review documentary evidence. (*Id.* Ex. 3.) In other words, Plaintiff received all the pre-termination process contemplated by *Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495. Accordingly, Plaintiff's procedural due process prop-

erty claim alleged in Count I of the Second Amended Complaint will be dismissed.

### B. Substantive Due Process

Plaintiff next alleges that his substantive due process rights were violated during the course of his termination. In essence, he contends that because he was terminated without just cause and because his termination was accompanied by stigmatizing and false accusations, both his substantive property and liberty interests were violated. Prior to addressing the merits of Plaintiff's claim, the Court notes that it must first consider whether the Constitution affords substantive due process protection in the area of public employment. This area of law suffers from conflicting rulings in the Tenth Circuit and its lower district courts.[2] Consequently, while this Court has a great deal of difficulty with the view that such a right exists, it will assume for purposes of this motion that Plaintiff had a substantive due process right in his public employment.

2. There seems to be some confusion concerning the Tenth Circuit's exact position on substantive due process in the area of public employment. One district court found that the Tenth Circuit has yet to take a position on whether public employment falls within the substantive due process protections of the Fourteenth Amendment. *Cibas v. Lockwood,* No. CIV 90–0341 JC/WWD, slip op. at 63 (D.N.M. Aug. 22, 1994) (observing that the "Tenth Circuit does not appear to have ever directly addressed this issue"). The Tenth Circuit stated in *Archuleta v. Colorado Dep't. of Insts:* "For purposes of this opinion, we assume, without holding, that the plaintiff's property interest [in his public job] is entitled to the protection of substantive due process. As we noted in *Jacobs v. City of Lawrence,* 927 F.2d 1111, 1119 (10th Cir.1991), it is not clear what interest is required to trigger substantive due process guarantees." 936 F.2d 483, 489 n. 6 (1991).

*Cibas* and *Archuleta,* however, make no reference to the line of Tenth Circuit and its lower district court cases that expressly found substantive due process rights in the area of public employment. For example, in *Brenna v. Southern Col. State College,* a tenured college professor, who was terminated for budgetary reasons, brought a 42 U.S.C. § 1983 action against the college claiming that "the decision to remove him instead of [a] nontenured professor was so arbitrary or capricious as to violate the concept of 'substantive' due process embodied in the Fourteenth Amendment." 589 F.2d 475, 476 (10th Cir.1978). Although the Tenth Circuit ulti-

mately agreed with the trial court that the college's decision to retain a nontenured faculty member rather than a tenured professor was not arbitrary or capricious, in doing so it set forth the legal showing necessary to sustain such a claim: "In order to present a claim of denial of 'substantive' due process by a *discharge* for arbitrary or capricious reasons, a liberty or property interest must be present to which the protection of due process can attach." *Id.* (citations omitted) (emphasis added). The court added that "[t]he term 'tenure,' in the constitutional context, merely provides appellant with a property interest. 'Substantive' due process requires only that termination of that interest not be arbitrary, capricious, or without a rational basis." *Id.* at 477; *see also McGhee v. Draper,* 564 F.2d 902 (10th Cir.1977) (recognizing substantive due process in public employment where a liberty or property interest is found); *Weathers v. West Yuma County Sch. Dist. R–J–I,* 530 F.2d 1335, 1340–41 (10th Cir.1976) (implying that where there is a liberty or property right implicated in a case of public discharge, substantive due process protection will lie); *Sipes v. U.S.,* 744 F.2d 1418, 1420 (10th Cir.1984) (holding that " '[i]n order to present a claim for denial of substantive due process by a discharge for arbitrary or capricious reasons,' " a liberty or property interest must be present); *Sanchez v. Sanchez,* 777 F.Supp. 906, 918 (D.N.M.1991) (proper to instruct jury on theories of substantive due process in public discharge case).

### 1. *Property*

■ Plaintiff alleges that, as a classified state employee who enjoyed a property right in his job, "he was wrongfully deprived of that property right when King terminated him without just cause," and therefore, he has alleged a "classic substantive due process property deprivation claim." (Pl.'s Mem. at 23.) This Court need not decide whether the sole allegation of termination without just cause rises to the level of a substantive due process violation. *See* discussion *supra* note 2. As discussed earlier, after having appealed his termination and receiving a favorable disposition, Plaintiff voluntarily and knowingly waived any remedies the State Personnel Board may have provided him. Whether this might have included reinstatement and/or back pay, the Court will not speculate. But the fact remains: "All of the property rights that plaintiff asserted to have been wrongfully taken ... [may have been] restored by the decision of the State Personnel Board." *Archuleta*, 936 F.2d at 489. Plaintiff voluntarily and knowingly opted against exploring these possibilities. In these circumstances, Plaintiff cannot now complain that the state deprived him of his substantive due process property rights. Therefore, the substantive due process property claim alleged in Count I of the Second Amended Complaint will be dismissed.

### 2. *Liberty*

■ Plaintiff's next alleges he has a substantive due process liberty claim. He maintains that "King falsely accused [him] of dishonesty and/or immorality that seriously damaged his standing and associations in the community and foreclosed his ability to take advantage of employment opportunities." (SAC ¶ 34.).

" 'The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities.' The *manner* in which a public employee is terminated may deprive him of either or both of these liberty interests." *Miller v. City of Mission, Kansas*, 705 F.2d 368, 373 (10th Cir.1983) (citations omitted) (emphasis added) (quoting *Weathers v. West Yuma County School Dist. R–J–1*, 530 F.2d 1335, 1338 (10th Cir.1976)). "Th[ese] interest[s], however, [are] not accorded substantive due process protection. Rather, the right accorded is that of procedural due process, specifically the right to an opportunity to refute the charges and clear one's name." *Austin v. Neal*, 933 F.Supp. 444, 455–56 (E.D.Pa.1996) (citing *In re Selcraig*, 705 F.2d 789, 796–97 (5th Cir.1983); *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977); *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976); *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707; *Brennan v. Hendrigan*, 888 F.2d 189, 196 (1st Cir.1989); *Doe v. U.S. Dep't. of Justice*, 753 F.2d 1092, 1102–03 (D.C.Cir. 1985)).

Once a reputational liberty interest has been implicated, the plaintiff must then establish that he was deprived of an adequate *name-clearing hearing*. *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir.1994) (holding that "[o]nce a liberty interest is implicated, the due process protections of the Fourteenth Amendment are innervated and [the plaintiff] must show he was not afforded an adequate *name-clearing hearing*") (emphasis added); *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 579 (10th Cir.1996) (after having found that the plaintiff set out a claim of liberty deprivation, the Tenth Circuit held that the plaintiff "[t]hus ... has made a showing that she was entitled to notice and a due process *hearing to clear her name*") (emphasis added); *see also Melton*, 928 F.2d at 930–31 (10th Cir.1991); *Asbill v. Housing Authority of Choctaw Nation of Oklahoma*, 726 F.2d 1499, 1504 (10th Cir. 1984); *Palmer v. City of Monticello*, 31 F.3d 1499, 1502 (10th Cir.1994); *Miller v. City of Mission, Kan.*, 705 F.2d 368, 373 (10th Cir. 1983). Here, Plaintiff has not alleged that he was denied an adequate name-clearing hearing. In any event, the Court has already found that Plaintiff received all the process that was due and that he waived further procedure. Accordingly, Plaintiffs claim for liberty deprivation in Count I of the Second Amended Complaint likewise will be dismissed.

## II. The Equal Protection Claim

■ The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. It is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir.1991). Courts recognize three distinct species of equal protection cases. "The common kinds are two. One involves charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment. The other, which rarely succeeds nowadays, involves challenges to laws or policies alleged to make irrational distinctions. . . ." *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir.1995) (citations omitted). The third kind of equal protection claim involves a situation where "the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him." *Id.* at 179; *see also Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) ("not a denial of equal protection unless there is shown to be . . . an element of intentional or purposeful discrimination"); *Buckley*, 933 F.2d at 859 (equal protection clause applicable where there is "an element of intentional or purposeful discrimination" in state procedures); *Zaintz v. City of Albuquerque*, 739 F.Supp. 1462, 1472 (D.N.M.1990) (same); *Smith v. Eastern New Mexico Med. Ctr.*, 1995 WL 749712, at *8 (10th Cir. Dec.19, 1995) (unpublished) (holding that "the Equal Protection Clause affords protection to an individual injured by intentional or purposeful discrimination . . . without, identification of a class") (citation and quotation omitted).

Plaintiff contends, as the basis of his equal protection claim, that since all other employees of the State Treasurer's Office are entitled to be discharged only for just cause and because he was maliciously discharged without just cause, his termination violated the Equal Protection Clause. The pertinent allegations in his Second Amended Complaint are as follows:

40. As a public employee, the Plaintiff was entitled to equal protection of the laws including that his employment could not be terminated without just cause.

41. King's action in terminating the Plaintiff's public employment without just cause was willful and intentional and taken for the sole purpose of injuring the Plaintiff.

42. In acting willfully, intentionally and maliciously for the sole purpose of injuring the Plaintiff, King deprived the Plaintiff of equal protection of the law. King's treatment of the Plaintiff in a manner disparate from other employees of the Treasurer's Office was a spiteful effort on his part to punish the Plaintiff for reasons wholly unrelated to any legitimate state objective.

On its face, Plaintiff's Second Amended Complaint does not fit the traditional molds of equal protection claims. He does not allege that he was singled out as a member of a suspect class, nor does he challenge any state law or policy as making irrational distinctions. Rather the Complaint states that Plaintiff's termination was the result of "intentional or purposeful" application of the state termination procedures. His claim thus conforms to the third type of equal protection claim, alleging that there was " 'an element of intentional or purposeful discrimination' in the application of . . . [state] procedures so as to invoke the clause as an individual." *Buckley*, 933 F.2d at 859 (citation omitted).

Having alleged "an element of intentional or purposeful" discrimination by Defendant, however, Plaintiff must also allege whether similarly situated individuals were treated differently. "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley*, 933 F.2d at 859; *see also Yerardi's Moody St. Restaurant & Lounge v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir.1989) (holding "the right to equal protection is the right not to be treated differently from those similarly situated") (citations omitted); *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir.1994). The Tenth Circuit opinion of *Smith v. Eastern New Mexico Med. Ctr.* is instructive as to this requirement. 1995 WL 749712. In *Smith*, the plaintiff-physician claimed that his

equal protection rights were violated when he involuntarily left his position as vascular surgeon at Eastern New Mexico Medical Center (ENMMC) "following a series of wrongful disciplinary actions" by the defendants that were "improper, malicious and motivated by personal animosity...." *Id.* at * 1. The Tenth Circuit found that the plaintiff had properly alleged an equal protection claim. *Id.* at *7. However, in doing so, the court engaged in "careful analysis [of the complaint] under equal protection precedents and found as 'pertinent' the *detailed* allegations by the plaintiff in his complaint which indicated that other doctors who engaged in conduct similar to the plaintiff were not disciplined."[3] While concluding that "the Equal Protection Clause affords protection to an individual injured by 'intentional or purposeful discrimination,' without identification of a class" the court did not abandon Buckley's teaching that the clause "is triggered when the government treats someone differently than another who is similarly situated." *Smith*, 1995 WL 749712, at *7–8 (citations omitted). Thus, in determining that the motion to dismiss Plaintiff Smith's equal protection claim should not have been granted, the court focused on his averments that "Dr. Smith was disparately treated" from others who committed similar conduct.

Here, Plaintiff has not alleged whether any other employees were discharged for cause or that such employees were discharged at all (SAC ¶¶ 39–43) and, therefore, he has not alleged whether similarly situated employees were treated differently from him. Plaintiff does state that he was treated in a "manner disparate" from other employees, (SAC ¶ 42), however, mere conclusory allegations as distinguished from well-pleaded facts are insufficient to state a claim upon which relief may be granted. *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). Had the Plaintiff been able to allege, for example, that other employees who had been accused of bribery or some similarly serious charge—a charge, in this case, with sufficient probable cause to

support the issuance of a indictment—were either not disciplined at all, or were not discharged without just cause, this Court might not be inclined to grant the motion to dismiss. However, as Plaintiff has now had three opportunities to make sufficient allegations, the Court must conclude that further amendments to the Complaint would be futile and that Plaintiff clearly can state no allegations which will be sufficient to state an equal protection claim. Therefore, Count II of the Second Amended Complaint will be dismissed.

## CONCLUSION

Jurisdiction over Plaintiff's pendent state claims rests on 28 U.S.C. § 1367(a). That section permits district courts to decline to exercise supplemental jurisdiction when they have dismissed the claims over which they had original jurisdiction. 28 U.S.C. § 1367(c)(3). Because Plaintiff's Second Amended Complaint fails to sufficiently allege a federal cause of action, the Court will refrain from passing on the merits of his state claims and will dismiss them without prejudice. *See generally, United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

An order in accordance with this memorandum opinion is entered contemporaneously.

---

**3.** The complaint alleged, in pertinent part, the following:

In addition, there were also discussions at this meeting regarding (A) other doctors operating at the hospital with alcohol on their breath, (B) other doctors abandoning patients

because of personal disputes, (C) other doctors falsifying treatment records, and (D) other doctors yelling at nurses and throwing "temper tantrums", [sic] with the recognition that no actions had been taken by defendant....

*Smith*, 1995 WL 749712, at *5 (quoting Second Amended Comp. ¶ 33).